## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JANE GLOVER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | |
| | ) | **25-cv-56** |
| DOCRX, INC., OTEY WHITE & | ) | |
| ASSOCIATES, ADVERTISING & PUBLIC | ) | |
| RELATIONS, INC.; DOCRX DISPENSING, | ) | |
| INC.; DOCRX, LABS, INC.; RXTRANSMIT, | ) | |
| LLC; OVOW, LLC; JBCW ENTERPRISES, | ) | |
| LLC; SAINTS 76, LLC; CLAIMPAY, INC.; | ) | |
| COAST DIAGNOSTICS, LLC; and BRIAN | ) | |
| WARD, | ) | |
| | ) | **JURY DEMAND** |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

### I.    INTRODUCTION

1.    This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (hereinafter "Title VII") which provides for relief against discrimination in employment on the basis of sex and retaliation related thereto. The Plaintiff also sets forth claims under the laws of the State of Alabama. The Plaintiff seeks compensatory and punitive damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

### II.    JURISDICTION AND VENUE

2.    The unlawful employment practices alleged herein were committed by the Defendants

within Mobile County, Alabama. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 28 U.S.C. §§ 2201 and 2202. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(g).

4.      The Plaintiff requests a jury trial on all issues pursuant to 42 U.S.C § 1981a.

**III.    PARTIES**

5.       The Plaintiff, Jane Glover (hereinafter "Glover" or "Plaintiff"), is a female citizen of the United States, and a resident of the State of Alabama. Plaintiff was a former employee of the Defendants, at the Defendants' Mobile, Alabama, locations.

6.      The Defendant, Brian Ward, (hereinafter "Ward" or "Defendant"), at all times material to this action was the owner of and employed as the Chief Executive Officer of DocRx, Inc., at the Mobile, Alabama, location and was a direct supervisor of the Plaintiff. Ward is a male citizen of the United States, and upon information and belief is presently a resident of the State of Alabama.

7.      The Defendant, DocRx, Inc. (hereinafter "DocRx" or "Defendant") is an Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a joint employer, and/or via agency as set out herein.

8.      The Defendant, Otey White & Associates, Advertising & Public Relations, Inc., (hereinafter "Otey White" or "Defendant") is a Louisiana corporation doing business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a

joint employer, and/or via agency as set out herein.

9.    The Defendant, DocRx Dispensing, Inc. (hereinafter "DocRx Dispensing" or "Defendant") is an Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a joint employer, and/or via agency as set out herein.

10.    The Defendant, DocRx, Labs, Inc. (hereinafter "DocRx Labs" or "Defendant") is an Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a joint employer, and/or via agency as set out herein.

11.    The Defendant, RxTransmit, LLC (hereinafter "RxTransmit" or "Defendant") is an Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a joint employer, and/or via agency as set out herein.

12.    The Defendant, OVOW LLC (hereinafter "OVOW" or "Defendant") is an Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a joint employer, and/or via agency as set out herein.

13.    The Defendant, JBCW Enterprises, LLC (hereinafter "JBCW" or "Defendant") is an Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a joint employer, and/or via agency as set out herein.

14.     The Defendant, Saints 76, LLC (hereinafter "Saints 76" or "Defendant") is an Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a joint employer, and/or via agency as set out herein.

15.     The Defendant, Claimpay, Inc. (hereinafter "Claimpay" or "Defendant") is an Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a joint employer, and/or via agency as set out herein.

16.     The Defendant, Coast Diagnostics, LLC (hereinafter "Coast Diagnostics" or "Defendant") is an Alabama corporation licensed to do business in and operating in Mobile County, Alabama. During the time period pertinent to this lawsuit, the Defendant was the Plaintiff's employer within the meaning of Title VII as a single employer, a joint employer, and/or via agency as set out herein.

17.     At all times relevant to this action the Defendants DocRx, Otey White, DocRx Dispensing, DocRx Labs, RxTransmit, OVOW, JBCW, Saints 76, Claimpay, and Coast Diagnostics have employed at least fifteen (15) or more employees for the purposes of Title VII as a single employer, a joint employer, and/or via agency with one another.

18.     Defendants DocRx, DocRx Dispensing, DocRx Labs, RxTransmit, OVOW, JBCW, Saints 76, Claimpay, and Coast Diagnostics are owned and operated by Brian Ward and/or his wife Jennifer Ward; share ownership and/or management; share employees and/or agents; share accounting personnel; and operate out of a singular address/location.

19.    The Defendants DocRx, Otey White, DocRx Dispensing, DocRx Labs, RxTransmit, OVOW, JBCW, Saints 76, Claimpay, and Coast Diagnostics are employers pursuant to 42 U.S.C. § 12111(5); and employers within the meaning of 42 U.S.C. § 2000e(a) and (b).

## IV.    ADMINISTRATIVE EXHAUSTION

20.    The Plaintiff has satisfied all administrative prerequisites for filing suit under Title VII against the business entity Defendants. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on January 24, 2024 [Charge No.: 425-2024-00560]. On November 18, 2024, a Notice of Right to Sue was issued by the E.E.O.C. to Plaintiff and she is filing this suit within ninety (90) days of her receipt of the Notice of Right to Sue.

## V.    STATEMENT OF FACTS AND CLAIMS

21.    Plaintiff began working for Defendants in July 2017 as the Site Vice President over the Telehealth and Marketing Divisions of DocRx.

22.    Thereafter she became the full-time Director of Marketing and Public Relations for DocRx.

23.    Since late 2021/early 2022 the Plaintiff reported directly to the owner and Chief Executive Officer of DocRx, Brian Ward. The President and co-owner of DocRx is Brian Ward's wife, Jennifer Ward.

24.    During the Plaintiff's employment she, and other female employees, were subjected on ongoing blatant and unwelcome acts of sexual harassment by both Kevin Jones (Facilities Director) and by Brian Ward (Owner/CEO).

25.    Plaintiff and other female employees were routinely subjected to a sexually hostile work environment which was created, condoned, and encouraged by the owner of the company.

26.     To Plaintiff's knowledge, Kevin Jones had multiple complaints of sexual harassment and inappropriate behavior made against him since at least 2020 by the Plaintiff and other female employees including Jordan Camp, Kristin McCarron, Morgan Edenfield, and Tabitha Henderson. These complaints were made to Brian Ward, Ashley Petersen (COO), Michael Brogan (Former Compliance Officer), and to the Human Resources Director at the time, Catherine Hunter.

27.     The current DocRx Human Resources Director, Julie Hass, was also made aware of at least some of these complaints.

28.     The complaints against Kevin Jones were found justified and he was to receive disciplinary action of mandatory anti-harassment training, a reduction in pay, being assigned to a remote position in order to minimize his physical presence on Company premises and being prohibited from working with or around the complaining employees.

29.     However, despite the alleged discipline to be taken against Kevin Jones, he was in fact allowed to return to work at company property sites among the same female employees who had made complaints against him and was then moved into an on-site DocRx office. Jones continued to subject female employees, including Plaintiff, to unwelcome sexual harassment and inappropriate sexual behavior including, but not limited to the following: hugging, constant touching, groping, telling Plaintiff to get up and hug him, side hugs, grabbing Plaintiff's hands, and making unwanted and inappropriate comments about her physical appearance.

30.     For example, after Jones returned to work following the reports of sexual harassment against him, he would use a mocking tone and tell Plaintiff things like, "I hope this

doesn't make you uncomfortable if I say you look beautiful," making it clear that the reports made against him had not been taken seriously.

31.    It was further made clear that nothing would be done about Jones's continued sexually harassing behavior as the owner, Brian Ward, witnessed many of Jones's sexually inappropriate actions and would simply laugh about it in the Plaintiff's presence or the presence of other female employees and jokingly refer to Jones as "Creepy Kev."

32.    When the Plaintiff told Brian Ward about Jones's inappropriate behavior, Ward would just laugh and tell her not to pay any attention to Jones. Ward repeatedly responded to the Plaintiff's complaints with, "that's just Kevin," and nothing was done.

33.    Plaintiff last complained to Brian Ward about the sexual harassment in the presence of the Office Manager in 2023 and once again, nothing was done, and the Plaintiff's complaint was ignored. It was all a joke in the boy's club atmosphere.

34.    This was not surprising as the Owner/CEO, Brian Ward, also participated in creating a sexually hostile work environment.

35.    After the Plaintiff began reporting directly to Brian Ward, since at least March 2022, Ward subjected her to ongoing, continuous, and unwanted sexual harassment throughout the remainder of her employment.

36.    His acts of unwelcomed sexual harassment include, but are not limited to, the following: talking about sex to Plaintiff; calling Plaintiff in his office to tell her about his sexual encounters with his wife (the President of the company); talking about how many sexual partners he had in the past; talking to Plaintiff in explicit terms about his own sex life and the sex lives of at least two female co-workers, including the "size" of one of their husbands genitalia; asking

7

Plaintiff about her sex life; telling Plaintiff that he is "so big" that his wife "can barely take it;" texting Plaintiff links to websites for sex toys; constantly talking to Plaintiff about the Rose sex toy and asking her on a regular basis whether she had ordered herself one yet; telling Plaintiff details about his wife's preferred sex toy, the Rose, including telling Plaintiff about this at least one time in his wife's presence; repeatedly asking Plaintiff if she had ordered herself a Rose sex toy and asking the Plaintiff for my address; talking about porn with co-workers in the Plaintiff's presence; mailing the Plaintiff a Rose sex toy in late 2022/early 2023; asking the Plaintiff while at work whether she had received the sex toy; sending the Plaintiff sexually inappropriate or explicit TikToks in group texts about things such as reasons you need to have sex every day. The Plaintiff last received such a group text from Brian Ward on August 19, 2023, which included a TikTok video by a "Sexual Health Coach." This group text included Brian Ward's wife Jennifer Ward (President of DocRx).

37.    Around August 2023, Brian Ward called the Plaintiff and another female employee into his office to discuss a business matter. During the discussion, the Plaintiff and her female co-worker brought up a new medication which was showing signs of reducing addiction in patients with regard to alcohol and smoking and it was thought the medication impacted areas of the brain which affect addiction. The co-worker mentioned a similar concern that porn addiction changed areas of the brain. Ward then stated that he did not think that porn addiction is a real thing; informed us that porn is a healthy outlet that keeps men from cheating on their wives and giving couples ideas. The co-worker disagreed with this and told Ward that was crazy. Plaintiff just shut down and did her best to ignore him and not participate in the sex talk.

38.    Brian Ward also kept PornHub icons and bookmarks blatantly displayed on his

desktop screen at work. At times he would ask the Plaintiff and other female employees to look at things on his desktop and the PornHub "favorites" he had bookmarked or saved were just blatantly displayed.

39.     Brian Ward also talked to Plaintiff and another female employee about "hook up" sites, brothels in New Orleans, swingers' bars, and similar sex establishments. He also tried to "hook up" Plaintiff with one of his son's friends, to which Plaintiff made clear that she was not interested.

40.     Ward was so obsessed with sex and talked about it so often it is almost impossible to recount every single time he brought up sex at work to the Plaintiff and/or other female employees. It was a routine occurrence and no sexual topic was off limits with him.

41.     The DocRx IT Director also informed Plaintiff that Brian Ward possessed sexually graphic and inappropriate images of female employees on his office computer comprised of photos which Ward had taken of various female employees and then edited to focus on various body parts.

42.     Prior to 2022 Plaintiff was aware that Brian Ward had subjected such unwelcomed sexual behavior to another female employee including directing her to package sex toys in purple gift bags to be given to his "couple friends." That employee quit her job and once she was gone, Ward began targeting the Plaintiff directly as set out above.

43.     Plaintiff never encouraged, welcomed, or reciprocated Brian Ward's inappropriate sexual behavior. She would do her best to ignore him, shut down his inappropriate conversations, or avoid his sexual harassment.

44.     Plaintiff refused to participate in Ward's sex talk and sex toy obsession. She did her best to avoid interactions with him as the harassment escalated and continued.

45.    Any time an employee, including Plaintiff, would rebuff or oppose his sexual harassment he would become angry, threatening, aggressive, and insulting.

46.    As the Owner/CEO of the company, Brian Ward made it clear that he thought acts of sexual harassment were funny (as with Kevin Jones), and that complaints of such harassment were laughed at and ignored.

47.    Plaintiff was informed by Julie Hass (Human Resources Director) that Brian Ward had in the past told her [Hass] to discipline the Plaintiff, however, there was no legitimate reason for any disciplinary action, so Hass refused to do so. Plaintiff believes these instances were attempts to retaliate against her for rebuffing his inappropriate sexual behavior or her refusal to cooperate with his sexual advances and inquiries.

48.    Julie Hass was aware of Brian Ward's behavior and confided to Plaintiff that she had told Brian Ward that he cannot talk to and treat employees in the manner that he does; however, his behavior never changed, and he continued to create a sexually hostile and intimidating environment for Plaintiff and for others.

49.    On or about Wednesday, September 6, 2023, (shortly after Brian Ward had sent the "Sexual Health Coach" TikTok video group text to Plaintiff), the Plaintiff was informed by Brian Ward and Julie Hass (Human Resources Director) that they were either going to be terminated or could choose go to work for Otey White & Associates, a company owned and operated by one of Brian Ward's close friends, Mr. Otey White.

50.    Plaintiff was told that while she would technically be on the Otey White payroll, that Brian Ward would still pay her salary/benefits which would be billed to him by this other company. Basically, Otey White & Associates would be a middle-man payroll agent for us on

10

behalf of DocRx and Brian Ward. We were to continue to perform work for DocRx but in a different physical location away from the DocRx worksite.

51.     Plaintiff was initially given a week to consider her options, however later on that Friday evening the Plaintiff received a barrage of angry and threatening texts from Brian Ward trying to force her hand and stating that he had flipped desk over in his hotel room and threatening the Plaintiff to stop "talking" about him. He made clear that if she did give an answer by Monday that her employment would be terminated.

52.     During this time period, Julie Hass (Human Resources Director) set up a confidential meeting with Plaintiff off-site during which she told the Plaintiff that she felt that Plaintiff was being targeted by Brian Ward and that the Plaintiff needed to get away from him. It was clear to the Plaintiff that nothing would or could be done about Ward's harassing, threatening, or retaliatory behavior.

53.     Plaintiff chose to continue working for DocRx under the Otey White and Associates payroll proposal, as she needed her job and had limited time in which to make a decision.

54.     On or about September 11, 2023, Plaintiff was moved out of the DocRx building and to a separate work site which was located nearby in a vacant office space owned and leased by Brian Ward. However, once Plaintiff moved to this separate location all of her Director of Marketing and Public Relations job duties and authority were removed.

55.     Plaintiff was placed in a vacant office with no real work to perform except being given occasional tasks on DocRx projects assigned by Brian Ward via Jeff English (Account Executive with Otey White and Associates).

56.    Plaintiff retained her DocRx laptops, devices, software, email/communication accounts, etc. However, she was completely removed from her Director position, role, duties, and authority with the company. Her access to the DocRx building was also revoked by Brian Ward.

57.    Shortly thereafter the Plaintiff was constructively discharged and resigned her employment as she could not reasonably work under these punitive circumstances with the removal of her title, duties, responsibilities, and having had almost all of the essential terms and conditions of her employment removed or altered to such a degree that she was isolated and placed in a random vacant office space with no real definitive duties or position with the Defendants.

58.    This, coupled with the Human Resources Director confirming that nothing could or would be done about Mr. Ward's sexually harassing or retaliatory behavior and advising the Plaintiff that it would be in her best interest to get away from Brian Ward placed the Plaintiff in a position under which a reasonable person would have been compelled to resign.

59.    As such, Plaintiff turned in her resignation notice on or about October 27, 2023, to Otey White & Associates and also verbally to DocRx via Julie Hass (Human Resources).

60.    Plaintiff's last day worked was November 10, 2023.

61.    The Plaintiff was discriminated against on the basis of her sex/gender, female, by being subjected to a sexually hostile work environment by her co-worker and/or supervisor with respect to the terms, conditions and benefits of her employment which culminated in her constructive discharge.

62.    The Plaintiff was also subjected to unlawful retaliation because of her complaints of and opposition to the sexual harassment to which she was subjected via the removal of her title, duties, responsibilities, and having had almost all of the essential terms and conditions of her

employment removed or altered to such a degree that she was isolated and placed in a random vacant office space with no real definitive duties or position with the Defendants.

63.    The Plaintiff was also subjected to unlawful retaliation because of her complaints of and opposition to the sexual harassment to which she was subjected via her constructive discharge.

64.    The Defendants' unlawful conduct as set out herein was willful, malicious, and in wanton disregard of the Plaintiff's federally protected rights.    The Defendants acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights.

65.    Plaintiff did not receive any policies or training on sexual harassment, sex discrimination, or retaliation from the Defendants.

66.    The Defendants failed to promulgate or distribute an effective policy or procedure for lodging sexual harassment, sex discrimination or retaliation complaints.

67.    As the result of the Defendants' conduct the Plaintiff was deprived of income and other employment benefits due her. The Defendants' conduct as described above caused the Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

68.    Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory, and punitive damages is her only means of securing adequate relief.

69.    Plaintiff is suffering and will continue to suffer irreparable injury from the Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT I - TITLE VII VIOLATIONS BY DocRx AND RELATED ENTITIES: SEXUAL HARASSMENT OF PLAINTIFF

70.    Plaintiff re-alleges and incorporates by reference Fact paragraphs 21 through 60 above with the same force and effect as if fully set out in specific detail hereinbelow.

71.    The Defendants (as identified in paragraphs 7 through 19) willfully and maliciously subjected the Plaintiff to unlawful sexual harassment, thereby discriminating against her on the basis of sex with respect to the terms, conditions, and privileges of her employment, which culminated in the Plaintiff's constructive discharge effectively ending her employment.

72.    The sexual harassment of the Plaintiff by her co-worker and/or supervisor, as set out in detail above, was unwelcome and was severe and/or pervasive enough to adversely affect the terms and conditions of her employment.

73.    The Defendants knew or should have known of the sexual harassment of the Plaintiff and/or the sexually hostile environment to which she was subjected and did not take effective preventative action or prompt effective remedial action.

74.    Said sexual harassment was done maliciously, willfully, and with reckless disregard for the rights of the Plaintiff.

75.    Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunction relief, and compensatory and punitive damages is her only means of securing adequate relief.

76.    Plaintiff is now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT II - TITLE VII VIOLATIONS BY DoxRx AND RELATED ENTITES: UNLAWFUL RETALIATON AGAINST PLAINTIFF

77.     Plaintiff re-alleges and incorporates by reference Fact paragraphs 21 through 60 above with the same force and effect as if fully set out in specific detail hereinbelow.

78.     As set out in detail above, the Defendants (as identified in paragraphs 7 through 19), willfully and maliciously subjected the Plaintiff to unlawful sexual harassment.

79.     The Plaintiff rebuffed the acts of unwelcomed sexual harassment to which she was subjected by her co-worker and her supervisor.

80.     When the sexual harassment did not cease, the Plaintiff also made good faith and reasonable complaints of sexual harassment to the Defendants about the unwelcome, sexual harassment.

81.     The Defendants retaliated against the Plaintiff for rebuffing unwanted sexual advances and for opposing sexual harassment in the terms, conditions and benefits of her employment, via the removal of her title, duties, responsibilities, and having had almost all of the essential terms and conditions of her employment removed or altered to such a degree that she was isolated and placed in a random vacant office space with no real definitive duties or position with the Defendants.

82.     The Defendants retaliated against the Plaintiff for rebuffing unwanted sexual advances and for opposing sexual harassment in the terms, conditions and benefits of her employment, via her constructive discharge effectively ending her employment.

83.     Said retaliatory acts were done maliciously, willfully, and with reckless disregard for the rights of the Plaintiff.

84. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunction relief, and compensatory and punitive damages is her only means of securing adequate relief.

85. Plaintiff is now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT III – INVASION OF PRIVACY
## BY DEFENDANTS BRIAN WARD AND DocRx, INC.

86. Plaintiff re-alleges and incorporates by reference Fact paragraphs 21 through 60 above with the same force and effect as if fully set out in specific detail hereinbelow.

87. This is a claim arising under the laws of the State of Alabama to redress violations by Defendant Brian Ward of the Plaintiff's right to privacy and the condoning and ratification of that conduct by Defendant DocRx, Inc..

88. The conduct of Brian Ward, as set out in detail above, was an intentional invasion of Plaintiff's privacy and proximately caused the Plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from the Defendants.

89. The Defendant, DocRx, Inc., condoned, authorized, and/or ratified Brian Ward's unlawful conduct and is directly liable for the acts of its agent.

## COUNT IV – NEGLIGENT AND/OR WANTON HIRING, SUPERVISION, TRAINING,
## AND RETENTION BY DEFENDANT DocRx, INC.

90. Plaintiff re-alleges and incorporates by reference Fact paragraphs 21 through 60 above with the same force and effect as if fully set out in specific detail hereinbelow.

91. This is a claim arising under the laws of the State of Alabama to redress the negligent and/or wanton hiring, supervision, training, and retention of Brian Ward, Kevin Jones,

16

and/or Julie Hass which proximately caused the invasion of the Plaintiff's privacy, the sexual harassment of the Plaintiff, and the acts of retaliation taken against the Plaintiff as set out in detail herein.

92.    These unlawful acts to which the Plaintiff was subjected caused her to suffer great emotional distress for which she claims compensatory and punitive damages from the Defendants.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.    Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendants violative of the rights of the Plaintiffs as secured by Title VII and the laws of the State of Alabama.

2.    Grant Plaintiff a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting in concert with the Defendants and at the Defendants' request from continuing to violate Title VII and the laws of the State of Alabama.

3.    Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her the position(s) she would occupy in the absence of sex harassment and retaliation and/or frontpay, backpay (plus interest), compensatory, punitive, and/or nominal damages.

4.    Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her compensatory, punitive, and/or nominal damages to which she is entitled as a result of the Defendants' violations of Alabama State law.

5.    The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

17

Respectfully submitted,

s/ Temple D. Trueblood
Temple D. Trueblood (TRUE0355)
Counsel for Plaintiff

OF COUNSEL:
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

**THE PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

s/ Temple D. Trueblood
OF COUNSEL

**Plaintiff requests this Honorable Court to serve via certified mail upon each of the named Defendants the following: Summons, Complaint.**

**Defendants' Addresses:**
**DOCRX, INC.**
**c/o Registered Agent**
**Brian Ward**
**5413 Springhill Woods Drive South**
**Mobile, AL 36608**

**OTEY WHITE & ASSOCIATES, ADVERTISING & PUBLIC RELATIONS, INC.**
**c/o Registered Agent**
**Otey Leroy White, III**
**8146 One Calais**
**Baton Rouge, LA 70809**

**DOCRX DISPENSING, INC.**
**c/o Registered Agent**
**Brian Ward**
**4636 Bit & Spur Road, Suite A**
**Mobile, AL 36608**

18

**DOCRX, LABS, INC.**
**c/o Registered Agent**
**Brian Ward**
**4636 Bit & Spur Road, Suite A**
**Mobile, AL 36608**

**RXTRANSMIT, LLC**
**c/o Registered Agent**
**Brian Ward**
**4636 Bit & Spur Road, Suite A**
**Mobile, AL 36608**

**OVOW, LLC**
**c/o Registered Agent**
**Jennifer Ward**
**4636 Bit & Spur Road**
**Mobile, AL 36608**

**JBCW ENTERPRISES, LLC**
**c/o Registered Agent**
**Brian Ward**
**4636 Bit & Spur Road, Suite A**
**Mobile, AL 36608**

**SAINTS 76, LLC**
**c/o Registered Agent**
**Jennifer Ward**
**4636 Bit & Spur Road**
**Mobile, AL 36608**

**CLAIMPAY, INC.**
**c/o Registered Agent**
**Brian Ward**
**4636 Bit & Spur Road, Suite A**
**Mobile, AL 36608**

**COAST DIAGNOSTICS, LLC**
**c/o Registered Agent**
**Brian Ward**
**4636 Bit & Spur Road, Suite A**
**Mobile, AL 36608**

**BRIAN WARD**
**4636 Bit & Spur Road, Suite A**
**Mobile, AL 36608**

<u>s/ Temple D. Trueblood</u>
OF COUNSEL